UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-224-GWU

BILLY D. WILLIAMS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Williams

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Williams

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Williams

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Williams

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Williams suffered from coronary artery disease (status-post two separate angioplasties with three stent implantations, status-post cardiac arrest with resuscitation, status post acute inferior wall infarction, and a history of unstable angina), an adjustment disorder with anxiety, Grave's Disease affecting the right eye, gout, hyperthyroidism, hypertension, hyperlipidemia, and cervical strain as well as complaints of right shoulder pain, left-sided numbness, intermittent shortness of breath, dizziness, and sleep disturbance. (Tr. 17).

On this appeal, the plaintiff's only specific argument is that the ALJ provided no rationale for finding that the plaintiff was not in disabling pain or in assessing his credibility. Yet a review of the agency decision reveals that the ALJ specifically stated that "the self-reported daily activities belie any disabling symptomatology"[1]

---

[1] The plaintiff testified that he took care of his two dogs. (Tr. 329). In a form completed before the hearing, he indicated that he visited family and friends, rents movies to watch at home, would sometimes take a ride with his wife, listened to music

Williams

and also that he had observed the plaintiff at the hearing and found that Williams had not appeared in obvious discomfort or had the physical appearance of someone who had experienced long-term pain. (Tr. 18). He described the plaintiff's testimony as generally vague and unconvincing. (Id.). Thus, it can not be said that the ALJ did not address some factors pertinent to the assessment of pain or credibility.

Beyond this, it is clear that the physical limitations used were supported by substantial evidence.

The plaintiff's primary source of disability, according to his own testimony, was his heart condition (Tr. 329), including an acute myocardial infarction suffered in February, 2004. (Tr. 141). He soon underwent angioplasty and stenting. (Id.). In April, a stress thallium test was said to have been markedly abnormal in result, yet the doctor's comment was that this was "sort of expected right after his infarct." (Tr. 212). That October, his cardiologist noted that the patient felt better and had a normal physical examination pertaining to the cardiovascular system. (Tr. 206-207). Although he checked that portion of the progress note form indicating "disabled", this was only the "social history" part of the form. (Tr. 206).[2] In December, the plaintiff's family doctor noted that the plaintiff had high blood pressure, but declined to issue any functional capacity statement, deferring to Williams' cardiologist. (Tr. 221). The

---

and occasionally went to church or to a family dinner. (Tr. 78).

[2]Williams has not referred to this notation in his brief.

Williams

record shows that the cardiologist never provided a detailed assessment about the plaintiff's permanent work limitations.[3] Medical Reviewers P. Saranga and David Swan cited an ability to perform a limited range of light level work, acknowledging the cardiac problems. (Tr. 280, 288). This was adequate.

At the administrative hearing, the plaintiff also appeared to indicate that problems with gout (Tr. 329) were the next conditions in order of severity. However, in his testimony he appeared to indicate that limitations were not cited for the gout . (Tr. 331-333). This is consistent with progress notes of record, such as the one documenting an internal medicine specialist's examination in March, 2004, at which time the patient was prescribed medication for gout, with the notation that his left ankle was swollen (Tr. 157); no permanent physical restrictions were mentioned.

The plaintiff also mentioned that he suffered from Grave's Disease and a possibly related visual impairment, which is confirmed by the record. (Tr. 157, 229, 234, 250). During his hearing testimony, Williams seemed to imply that the eye doctor's limitations were only imposed during the time he was recovering from surgery. (Tr. 331-333). Progress notes additionally indicate a "limited up gaze" in the left eye (Tr. 228, 236, 241), which was essentially incorporated into a supplemental hypothetical question. This, again, was adequate.

---

[3]The plaintiff testified that he had recently been told about a weight restriction by his cardiologist. (Tr. 331). However, a close examination of the Discharge Instructions done by that doctor indicated that this was a temporary restriction only. (Tr. 305).

Williams

Thus, the ALJ's decision to use a hypothetical question tracking the medical reviewer-cited physical restrictions (compare Tr. 288-295 to Tr. 347) and adding the ability to only occasionally gaze upward (Tr. 347) was sufficient.

This the 9th day of February, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**